773 So.2d 973 (2000)
George WINTERS a/k/a George W. Winters a/k/a George Wesley Winters, Appellant,
v.
STATE of Mississippi, Appellee.
No. 1999-KA-01430-COA.
Court of Appeals of Mississippi.
November 21, 2000.
Raymond M. Baum, Winona, Attorney for Appellant.
Office of the Attorney General by John R. Henry, Jr., Attorney for Appellee.
BEFORE McMILLIN, C.J., LEE, AND PAYNE, JJ.
PAYNE, J., for the Court:

FACTS AND PROCEDURAL HISTORY
¶ 1. On August 14, 1998, George Winters was indicted on a charge of murder for the April 1, 1998 shooting death of Jerry Nash, the man that Winters's estranged wife had been dating since the Winterses separated several weeks earlier.
¶ 2. According to Winters, he went to his mother-in-law's home the night of April 1, 1998, armed with a pistol. When Winters looked inside and saw his estranged wife and Nash, whom he knew his wife to be dating, he cocked the gun. Nash then lunged at Winters and the gun went off, striking Nash three times and killing him. Winters turned himself in to the police the next morning.
¶ 3. On March 25, 1999, an Attala County Circuit Court jury convicted George Winters of manslaughter, and he was sentenced to serve twenty years in the custody of the Mississippi Department of Corrections. His motion for a JNOV or a new trial was denied, and he now appeals to *974 this Court asking that we reverse his conviction and order a new trial.

ARGUMENT AND DISCUSSION OF THE LAW

STANDARD OF REVIEW
¶ 4. With this appeal, George Winters argues that the trial court committed reversible error in refusing to allow Winters to call a court appointed psychologist to testify as to Winters's sanity at the time of the alleged offense.
¶ 5. Our standard of review in examining a trial judge's decision to allow or not allow a witness to testify is stated in Mississippi Rules of Evidence 702, and is described in Crawford v. State, 754 So.2d 1211 (¶ 7) (Miss.2000):
If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise. This Court reviews the trial court's decision to allow expert testimony under the well-known clearly erroneous standard.
(citations omitted).

DISCUSSION OF THE ISSUES

I. THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT REFUSED TO ALLOW THE DEFENDANT TO CALL A COURT APPOINTED PSYCHOLOGIST TO TESTIFY AS TO THE DEFENDANT'S SANITY AT THE TIME OF THE ALLEGED OFFENSE.
¶ 6. Winters claims the trial court erred in not allowing him to call the court appointed psychologist to testify concerning Winters's mental state at the time of the murder. Among his defenses at trial, Winters alleges he used self-defense because Nash lunged at him, and that the shots occurred in the heat of passion or by accident. Winters claims he originally wanted to use the insanity defense, but could not do so without the testimony of Dr. Lott, the psychologist who had examined him. Thus, Winters argues that the trial court erred in not allowing Dr. Lott's testimony and a new trial is warranted. We disagree.
¶ 7. First, we review Dr. Lott's written report concerning Winters's mental state. After detailed testing and observation, Dr. Lott concluded that Winters was not suffering from a severe mental illness at the time of the alleged offenses and therefore would have understood the nature and quality of his alleged actions. Also, Dr. Lott noted that Winters would have been able to distinguish the difference between right and wrong at that time and that Winters may have been under the influence of extreme mental and emotion disturbance at the time of the killing due to the status of his relationship with his wife. Dr. Lott points out, though, that regardless of Winters's emotional turmoil with his wife, Winters had the ability to appreciate the criminality of his conduct and that his ability to conform his conduct to the requirements to the law were not substantially impaired at the time he killed Nash.
¶ 8. Dr. Lott's testimony contradicts Winters's claim that Winters was not sane at the time of the killing. Thus, Dr. Lott could not bolster Winters's defense. We find it odd, then, that Winters would even want Dr. Lott to testify, since the doctor had concluded that Winters was not insane in accordance with the M'Naughten rule[1] as is needed to qualify as a valid insanity defense. Nonetheless, Winters argues the jury should be allowed to hear Dr. Lott's testimony to decide for themselves if his conclusion is credible.
*975 ¶ 9. In examining the entirety of the evidence in this case, we find not one piece of evidence existed in support of Winters's claim of insanity except for one witness who simply stated that Winters had a strange look on his face when he shot the victim. Winters tries to make an issue of the expert's testimony as to sanity; however, even were the jury to find the doctor not credible, such lack of credibility would not render Winters, then, insane by default as Winters seems to imply. Such impeachment of the expert would only act to cast doubt on the expert opinion as an untrustworthy conclusion and force the jury to examine the other evidence, which would leave only the witness's "strange look" testimony as Winters's sole support for his defense. This is simply not enough for any juror to find Winters not guilty by reason of insanity.
¶ 10. Due to the capability to confuse the issues, mislead the jury, and waste the court's time, the trial court could have properly excluded Dr. Lott's testimony under Mississippi Rule of Evidence 403 which states: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Even more fundamentally, the court was correct in excluding the testimony since, on the state of the record when Dr. Lott's testimony was being offered, it was irrelevant because (a) there was nothing before the court to suggest that the presumption of sanity that applies to all defendants had legitimately been called into question, (b) nothing in Dr. Lott's proposed testimony, based upon his pre-trial report, would do anything to alter that presumption, and (c) the defense presented no proffer of a coherent plan, which included Dr. Lott's testimony as an essential cog, to make the defendant's sanity a legitimate issue.
¶ 11. Winters nonetheless argues that the jury should have been allowed to make this conclusion and cites Russell v. State, 729 So.2d 781 (Miss.1997), in support of this claim. In Russell, the man shot his wife and then claimed at trial that he was insane at the time. The Russell case differed from the present case, though, in that the Russell defendant had lay witnesses who would testify as to his mental condition those days preceding the shooting, which testimonies would be in addition to the psychologist that Russell wished to have testify. The supreme court found error in the trial court's not allowing the psychologist to testify, since the psychologist's testimony would not be the sole presentation of Russell's mental state.
¶ 12. To distinguish Russell from the present case, in Russell, the expert testimony was vital to support the defendant's defense, and other witnesses would testify to corroborate the expert's testimony. In the case sub judice, the expert's testimony contradicts Winters's defense and no other substantial evidence acts to support Winters's claim of insanity. Thus, Russell is not the appropriate supporting authority for Winters to use in his case.
¶ 13. The record contains the judge's remarks concerning Winters's motion seeking to allow Dr. Lott to testify that Winters was not insane at the time of the killing. The judge stated that he was not permitting this because no evidence had been presented whatsoever that Winters was not sane at the time of the killing. The judge stated that if Dr. Lott was simply going to testify that Winters was sane at the time of the killing and knew wrong from right, that there was no need for the doctor to testify, since this issue of Winters's mental state had never been questioned. As we have previously stated, M.R.E. 403 keeps this testimony out because it would confuse the jury. We also note that the refusal to permit Dr. Lott to testify did not bar Winters from offering that evidence in some other form, which he opted not to do. At the very least, he should have made a proffer of what additional evidence he was prepared to offer in addition to Dr. Lott's testimony in order to *976 demonstrate to the trial court the strategy by which the defense intended to establish its insanity defense and how Dr. Lott's facially unhelpful testimony would, in actuality, help that cause. Winters did no such thing; thus, the trial court properly excluded Dr. Lott's testimony and no new trial is warranted.

CONCLUSION
¶ 14. Since M.R.E. 403 excludes otherwise relevant evidence because it may prejudice, confuse or waste the jury's time, we find that the trial judge properly excluded Dr. Lott's testimony. The judgment of the Attala County Circuit Court is affirmed.
¶ 15. THE JUDGMENT OF THE ATTALA COUNTY CIRCUIT COURT OF CONVICTION OF MANSLAUGHTER AND SENTENCE TO TWENTY YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS WITH SENTENCE TO RUN CONSECUTIVELY TO ANY SENTENCE PREVIOUSLY IMPOSED IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE TAXED TO ATTALA COUNTY.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, IRVING, LEE, MOORE, MYERS, AND THOMAS, JJ., CONCUR.
NOTES
[1] "To be M'Naughten insane, a defendant must be unable to distinguish right from wrong at the time the act is committed." Porter v. State, 492 So.2d 970, 975 (Miss.1986) (citations omitted).